# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CIJI M. BLAIR, | : | Case No. 3:18-cv-00018 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I.

To be eligible for Supplemental Security Income (SSI), Plaintiff Ciji M. Blair needed to convince the Social Security Administration that she is a "disabled individual." *See* 42 U.S.C. § 1382c(a)(1). She accomplished this in March 2011 when an Administrative Law Judge (ALJ) determined that her impairments—systemic lupus erythematosus combined with bipolar disorder—medically equaled the criteria under Listing 14.02A and B.[1] (Doc. #6, *PageID* #128). But this did not establish that Plaintiff was immediately eligible to receive SSI due to the possibility she might not satisfy the remaining nondisabilty requirements for SSI eligibility. *Id*. at 129.

The ALJ also noted, "while the claimant was not incarcerated at the time she filed her application, she has been incarcerated at her current location since November 5, 2010 and

---

[1] The Commissioner's Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

may have been incarcerated prior to this date." *Id*.

Plaintiff's incarceration created a problem: No person is eligible for Supplemental Security Income during months he or she "is an inmate of a public institution." *See* 42 U.S.C. § 1382(e)(1)(A).

Upon Plaintiff's release from incarceration in August 2014, she filed a new application for Supplemental Security Income, asserting that she had been under a disability beginning on June 4, 2009—her original disability onset date. Plaintiff's second SSI application did not fare as well as her first. ALJ Eric Anschuetz determined that Plaintiff did not meet Listing 14.02 or otherwise have a disability. He consequently denied her second SSI application. (Doc. #6, *PageID* #s 73-80).

Plaintiff presently challenges ALJ Anschuetz's decision. She sees two main problems: (1) ALJ Anschuetz erred by failing to apply res judicata to the previous ALJ's conclusion that she was under a disability, and (2) ALJ Anschuetz failed to properly evaluate the evidence concerning her systemic lupus erythematosus and other impairments. The Commissioner finds no error in the ALJ Anschuetz's decision and contends that substantial evidence supports his conclusions.

## II.

Plaintiff was twenty-eight years old when she applied for benefits in 2014. She was educated through high school plus two years of college. (Doc. #6, *PageID* #272). Her earnings over the years have occasionally been negligible, more often nothing. *Id*. at 262, 265. In the Administration's lexicon, she had no "past relevant work" that she could return to doing.

2

In 2014, Plaintiff listed her medical conditions as lupus, rheumatoid arthritis, asthma, fibromyalgia, blind right eye, blood clots legs, glaucoma, depression, congestive heart failure, and a possible renal condition. *Id*. at 271. Plaintiff told ALJ Anschuetz during an administrative hearing that she could not work due to swelling in her feet and hands, and constant body pain from the combination of lupus, fibromyalgia, and rheumatoid arthritis. *Id*. at 96. She's had lupus since age seventeen. Most days it is a chore for her to get up and get herself ready for the day. She lives with her father. She tries to pick up things in the house or cook him dinner when he gets home. She explained, "And that's basically my day. That's hard enough for me to do right there [to] just keep up and do simple things like dishes or cook and take care of myself…." *Id*. at 97. She can do these things when she has a good day. But when she has a bad day, she cannot get out of bed because she's in so much pain and can barely walk. *Id*. at 105. She explained, "My knees…, like I'll try to stand up, and my knees will want to give in, and it feels like I'm just going to fall over…. My feet are swollen and it hurts to walk on them. My hands get so swollen I can barely close them." *Id*. at 105-06. Her bad days sometimes occur two or three times a week.

Plaintiff explained to the ALJ that she had thought about returning to college, but she is always swollen and in pain. *Id*. at 99. She has symptoms all the time but also has flare ups when her symptoms—especially fatigue and swollen joints, feet, and knees—get worse. She naps one or two hours a day. In November 2014, after her release from incarceration, surgeons removed her right eye and replaced it with an artificial eye. She needed this surgery because of glaucoma, increased right-eye pressure, and nerve damage. After the surgery, she felt less pressure in her head but still had throbbing headaches a few times a

week. *Id*. at 101. Her headaches last until she goes to sleep. Her vision in her left eye is 20/20 with glasses.

### III.

An applicant for Supplemental Security Income is considered a "disabled" when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …." 42 U.S.C. 1382c(a)(3)(A).

To determine whether Plaintiff met this definition, ALJ Anschuetz examined the evidence in the five steps spelled out by Regulation, *see* 20 C.F.R. § 416.920(a)(4); *see also* Doc. #6, *PageID* #s 68-80:

> Step One: Plaintiff had not engaged in any substantial gainful activity since August 14, 2014.
>
> Step Two: Plaintiff had severe impairments of lupus, surgical removal of her right eye, curvature of the spine, headaches, depressive disorder, anxiety disorder, and history of substance abuse.
>
> Step Three: Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment described in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step Four: Plaintiff could perform a reduced range of light work.
>
> Step Five: Plaintiff's limited work ability, her age, education, and work experience matched up with more than 500,000 jobs in the national economy that she could perform.

These conclusions meant Plaintiff was not under a disability, leading ALJ Anschuetz to deny her application for benefits. *Id*. at 79-80.

Judicial review of ALJ Anschuetz's decision considers whether he applied the correct legal criteria and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d

742, 745-46 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). It is evidence upon which a reasonable mind might accept as adequate to support a conclusion. *Blakley*, 581 F.3d at 406 (citation omitted). Caution is warranted, however, because "a decision of the Commissioner will not be upheld where the [Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 546-47 (6th Cir. 2004)).

## IV.

Plaintiff maintains that ALJ Anschuetz erred by failing to apply res judicata to the previous ALJ's determination that she was under a disability since June 4, 2009.

The Commissioner argues that because Plaintiff's eligibility for benefits was terminated during her incarceration, she was required to file a new application for benefits upon her release from prison. Her new application was properly evaluated anew, according to the Commissioner, under the applicable five-step analysis without regard to her previously successful application.

ALJ Anschuetz mentioned Plaintiff previously successful SSI application, explaining, "the record reflects a prior favorable decision in 2011. However, the claimant was incarcerated at the time and no benefits were payable. Her claim expired because she was not released until August 2014 requiring her to file the [sic] another disability application." (Doc. #6, *PageID* #69).

Res judicata applies to the first ALJ's decision that Plaintiff was under a disability

5

starting on June 4, 2009 because "[r]es judicata … 'foreclose[s] successive litigation of the very same claim.'" *Earley v. Comm'r of Soc. Security*, 893 F.3d 929, 933 (6th Cir. 2018) (quoting, in part, *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). This seems like a win for Plaintiff. All the more so because the Social Security Administration's Notice of Award on May 3, 2011 explained to her, "you meet the medical requirements to receive SSI…, [and] you meet the non-medical rules. Because of this you are eligible to receive SSI as of June 2009 based on being disabled." (Doc. #6, *PageID* #171). But as revealed above, *supra*, § I, her incarceration prevented her from receiving SSI upon her incarceration. Her incarceration eventually ended her eligibility for SSI. The Regulations tell why.

The Regulations establish a suspension first, termination later procedure for individuals incarcerated in public institutions. When an SSI recipient is initially incarcerated, payment of his or her SSI is *suspended*. *See* 20 C.F.R. § 416.1325(a). Yet, SSI eligibility is not suspended forever. "If benefits are otherwise payable, they will be resumed effective with the earliest day of the month in which a recipient is no longer a resident of a public institution…." *Id*. § 416.1325(b). If the Regulations stopped here, Plaintiff's benefits would have automatically resumed after her release from prison (assuming she still met the other eligibility requirements). *See id*.

But the Regulations don't stop here. They also provide, "We [the Administration] will terminate your eligibility for benefits following 12 consecutive months of suspension for any reason …." *Id*. at § 416.1335. Plaintiff was not released from prison within 12 consecutive months. Consequently, her eligibility for SSI benefits was terminated at the start of her 13th month in prison with no possibility her eligibility would automatically

6

resume upon her release from prison. *Compare* § 416.1325(b) *with* § 416.1335. The Commissioner is therefore correct to point out that once Plaintiff's eligibility for SSI terminated during her incarceration, she needed to file a new SSI application upon her release from prison. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).

This, however, is not the same as saying that once Plaintiff was released from prison, she could not recover the past-due benefits she was eligible to receive during the time period before her incarceration when she was both disabled and otherwise eligible for SSI. Neither the fact of her incarceration nor the termination of her benefits altered her previously established eligibility for SSI, which started in early June 2009 and undisputedly continued until her incarceration. The termination Regulation, § 416.1335, supports this by pegging its effective date to "the start of the 13th month after the suspension starts." *Id.* There is no mention of retroactivity in this (or another) incarceration-related Regulation. *See id.*; *see also* 20 C.R.F. §§ 416.201, 416.211. This means that termination of SSI eligibility under § 416.1335 is decidedly forward looking. And the Commissioner does not cite to an incarceration-related Regulation that reaches back in time to terminate a previous SSI award.

The Commissioner does cite various cases. One case reports that "[f]rom its very inception, the [SSI] program has excluded from eligibility anyone who is an 'inmate of a public institution.'" *See Schweiker v. Wilson*, 450 U.S. 221, 224 (1981). Sure enough. But *Schweiker* does not address whether eligibility for SSI that is terminated because of incarceration applies retroactively to the Administration's previous SSI eligibility determination.

7

The Commissioner relies on two other cases indicating that an incarcerated person whose benefits were terminated must file a new benefits application upon release; no presumption of disability attaches to a pre-incarceration disability finding; and, the application is reviewed anew under the five-step-evaluation procedure. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008); *see also Brennan v. Astrue*, 501 F.Supp.2d 1303, 1309 (D. Kan. 2007). Neither case addresses the retroactivity issue that arises in the circumstances of the present case where Plaintiff was disabled and nonmedically eligible for benefits before incarceration but never received SSI for the period of time before her incarceration.

Two further cases the Commissioner cites declined to apply res judicata to a previous initial disability determination because there had been no trial-type (*i.e.*, ALJ hearing) hearing at the administrative level. *See Antico v. Astrue*, 1:13cv640, 2012 WL 4473157 (S.D. Ohio 2012); *see also Roark v. Comm'r of Soc. Sec.*, 1:10cv739, 2011 WL 6751190, at *11 (S.D. Ohio 2011). These cases are distinguished from Plaintiff's case because Plaintiff's first SSI application proceeded to a trial-type hearing held by an ALJ during which Plaintiff and a medical expert testified. *See* Doc. #6, *PageID* #125. Because of this, res judicata applies to the previous ALJ's determination that Plaintiff was under a disability since June 4, 2009, *see Earley*, 893 F.3d at 933; *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997), until her incarceration and related termination of her eligibility to receive SSI, 20 C.F.R. § 416.1335.

The final case the Commissioner relies on, *Hill v. Astrue*, 09-446-CL, 2010 WL 3361448 (D.Or. 2017), found that records from a previous disability determination—

including the previous disability decision—were not relevant to resolving a new application for benefits covering a new period of time after an incarceration-caused termination of benefits. *Hill*, a district-court case within the boundaries of the U.S. Court of Appeals for the Ninth Circuit, has no precedential impact in the present case. *Hill* likewise has no persuasive impact in the present case due to the contrary approach taken by the Sixth Circuit Court of Appeals when discussing res judicata in *Earley*.

*Earley* clarified that res judicata sometimes applies and sometimes does not apply in Social Security cases. Timing is the key: "'Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.'" 893 F.3d at 933 (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). And both the Commissioner and the applicant for benefits are entitled to seek a "fresh review of a new application for a new period of time." *Earley*, 893 F.3d at 934. When conducting such a review, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

When ALJ Anschuetz considered whether Plaintiff was disabled starting in and continuing after August 2014, he was not bound to the first ALJ's determination that Plaintiff's was under a disability starting in June 2009, although—absent new and additional evidence—it was a legitimate consideration. *See id*.

But an ALJ risks error by not considering a previous ALJ's disability decision when adjudicating an applicant's disability status during a new, later time period. The error is not

9

a misapplication of res judicata. It is "'best understood as a practical illustration of the substantial evidence rule' in which the prior factual finding was 'such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.'" *Id.* (quoting *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 477-78 (4th Cir. 1999)).

In the present case, the previous ALJ's determinations are highly probative of her disability status starting in August 2014. This is because it identified the same medical conditions that persisted in August 2014. The previous ALJ, moreover, placed controlling weight on a medical expert's opinions. The medical expert testified during Plaintiff's previous administrative hearing that the combination of Plaintiff's systemic lupus erythematous and bipolar disorder medically equaled Listing 14.02A and B. (Doc. #6, *PageID* #128). This finding meant that Plaintiff was under a disability without further inquiry. *See id.* at 128-29.

Rather than consider this previous finding at all, ALJ Anschuetz wrote, "I have considered Listing 14.02 (systemic lupus erythematosus) and find the claimant does not meet the limitations set forth therein." *Id.* at 73. He did not address the previous ALJ's finding that Plaintiff *medically equaled* Listing 14.02A and B, and he did not specifically address whether Plaintiff *medically equaled* this Listing. ALJ Anschuetz provided no reference to the new and additional evidence he relied on to stray this far from the first ALJ's Listing findings. ALJ Anschuetz did not have a medical expert testify during his administrative hearing, and he did not rely on a medical expert who considered the first medical expert's opinion. *See id.* And, ALJ Anschuetz provided no reasoning in support of

10

his conclusion that Plaintiff did not meet Listing 14.02. *See id*. For these reasons, and given the previous ALJ's highly probative disability determination at Step Three of his sequential evaluation, substantial evidence does not support ALJ Anschuetz's conclusion that Plaintiff did not meet Listing 14.02 and does not support his decision to omit consideration of the previous finding that Plaintiff's systemic lupus erythematous and bipolar disorder *medically equaled* Listing 14.02A and B.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

V.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The

latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Because res judicata applies to the first ALJ's decision (in March 2011) that Plaintiff was under a disability since June 4, 2009 and because the Social Security Administration informed Plaintiff (in May 2011) that she met the nondisability requirements, Plaintiff is entitled to her back SSI payment and monthly SSI payments as the Administration has documented, *see* Doc. # 36, *PageID* #s 171-81, until the date of her incarceration in a public institution.

However, a remand for an award of benefits is not warranted for the time period beginning on August 14, 2014 (the protective filing date of her SSI application) because, during this time period, the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is lacking. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of § 405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim and determine anew whether she was under a benefits-qualifying disability, including, at a minimum, (1) determining whether new and additional evidence of medical improvement exists in the record; (2) considering whether the previous ALJ's finding that Plaintiff's systemic lupus erythematous and bipolar disorder medically equaled Listing 14.02A and B remains dispositive of her disability status; and (3) re-assessing (if needed) Plaintiff's residual functional capacity.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability decision on September 14, 2016 is vacated;

2. This matter is remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of SSI to Plaintiff as set forth in its Notice of Award on March 3, 2011 until the date of her incarceration in a public institution;

3. This matter is otherwise remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Entry;

4. This case is terminated on the docket of this Court.

September 27, 2019                         *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge